IN THE UNITED STATED DISTRICT COURT FOR THE
EASTERN DISTRICT OF TEXAS

| | |
|---|---|
| JOHN NASCHINSKI § | |
| Plaintiff, § | |
| § | |
| v. § | Case Number 2:23-cv-00017-JRG |
| § | |
| YO CORP, and DOES 1 through 1, § | |
| inclusive, § | |
| Defendants. § | |

**DEFENDANT YO CORP.'S REPLY TO PLAINTIFF'S
OPPOSITION TO MOTION TO DISMISS**

Plaintiff's Opposition in response to Defendant's Motion to Dismiss ("Response") ignores key elements of Defendant's Re-Urged Motion to Dismiss and fails to cure the clear defects in Plaintiff's Amended Complaint. Accordingly, for the following reasons, Plaintiff's Amended Complaint must be dismissed under Rule 12(b)(6).

**I.     Plaintiff's attempt to recharacterize it's allegations as vicarious copyright infringement contradicts his Amended Complaint.**

    **a. Plaintiff's Amended Complaint alleges direct copyright infringement—not vicarious infringement.**

Plaintiff's Response (Doc. 14) argues that Plaintiff's allegations are for vicarious copyright infringement, and thus, evidence of volitional conduct is not required. Doc. 14. at pgs. 5-6. Plaintiff's argument is wholly unsupported by his pleadings.

Plaintiff's Amended Complaint is a claim against Defendant for direct copyright infringement—not vicarious infringement. *See* Doc 10. For example, Plaintiff alleges that "Defendant ***willfully*** infringed upon . . . [Plaintiff's photograph] . . . by using it in an infringing

post on Defendant's website and or social media."[1] *See* Doc. 10, at ¶ 25 (emphasis added). But, as Plaintiff states (correctly) in his Response, "[i]ntent or knowledge of the infringement is not an element of the claim for vicarious copyright infringement." *See* Doc. 14, at pg. 6. Moreover, Plaintiff's Amended Complaint does not contain any allegation that the photograph was uploaded by a third-party.

Accordingly, the only fair notice interpretation of Plaintiff's Amended Complaint is for a claim of direct infringement against Defendant. And because Plaintiff admits he has failed to allege volitional conduct by Defendant, his claim for direct infringement must fail. *See* Doc. 13, at pgs. 5-6.

      **b. Even assuming Plaintiff's Amended Complaint alleges vicarious infringement, that claim fails because Plaintiff has failed to allege the necessary direct infringement of a third party.**

Even if one could read a claim for vicarious infringement in Plaintiff's Amended Complaint, it must still be dismissed because Plaintiff fails to allege the necessary direct copyright infringement of a third party. "Vicarious liability is a theory of secondary liability for copyright infringement." *Flores v. Huego Holdings, LLC*, 2022 WL 17723227, at *3 (W.D. Tex. 2022) (citing *Leonard v. Stemtech International Inc.*, 834 F.3d. 376, 386 (3d Cir. 2016)). "Secondary liability for copyright infringement does not exist in the absence of a direct infringement by a third party." *Id*. (citing *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 n.2 (9th Cir. 2001)). "Thus, to prove a claim of … vicarious infringement, a plaintiff must first show direct infringement by a third party." *Id.* (citing *Stemtech*, 834 F.3d. at 386).

---

[1] Notably, the entirety of Plaintiff's Amended Complaint is exceedingly ambiguous as to Plaintiff's actual allegations or alleged causes of actions. For example, instead of listing a specific copyright cause of action, Plaintiff instead cites to an entire chapter of the U.S. Code, with no specific reference to either provision, other than to a provision regarding damages." *See* Doc. 10, at ¶¶ 23-28. The bulk of Plaintiff's factual allegations are simply conclusory statements with no support, such as "[Plaintiff] is informed and believes that Defendant has the right and ability to supervise and control all content that is posted to the Website" and "[Plaintiff] is informed and believes Defendant Yo Corp. monetizes the editorial content on its Website through banner advertisements." *See* Doc. 10, at ¶¶ 15-16.

2

As previously stated, Plaintiff's Amended Complaint fails to allege who uploaded the subject photograph to the website. To state a cause of action for direct copyright infringement, "a plaintiff must demonstrate …actionable copying, which is the copying of constituent elements of the work that are copyrightable." *See Flores*, WL 17723227, at *3.

Here, Plaintiff's only allegation of actionable copying is that "[o]n or about July 30, 2022, an article…containing an unauthorized copy of the Broadmoor Photograph … was uploaded to the Website" and that Yo Corp. "willfully infringed upon … [the Photograph] … by using it in an infringing post on" Yo Corp.'s website. *See* Doc. 10, at ¶¶ 10, 25. Plaintiff's cause of action also refers to "Defendant" in the singular—not the plural—indicating that Plaintiff's allegations are solely against Yo Corp.

Plaintiff's use of the passive voice is telling: the photograph "was uploaded". This hiding of the actor is fatal to any argument that Plaintiff has properly alleged direct infringement. Without an allegation of who uploaded the photograph, it is impossible to know, for example, if the person who uploaded the article properly licensed the photograph—which would defeat Plaintiff's claims entirely. It is also impossible to know whether the alleged direct infringement occurred entirely outside the U.S.—which would also defeat Plaintiff's claims. *See Geophysical Serv., Inc. v. TGS-NOPEC Geophysical Co.*, 850 F.3d 785, 799 (5th Cir. 2017) ("Where a copyright plaintiff claims contributory infringement predicated on direct infringement that occurred entirely extraterritorially, the plaintiff has stated no claim."); *see also Flores*, 2022 WL 17723227, at *3 (quoting *Geophysical* and explaining that there's no "legal reason a claim for vicarious liability would differ from contributory liability in this regard.")

Accordingly, even construing Plaintiff's allegations as vicarious copyright infringement, that claim must still fail because Plaintiff has not properly alleged the direct copyright infringement by a third-party necessary to support such a claim.

### c. Plaintiff's Response fails to show how Plaintiff's Amended Complaint alleges sufficient facts to show Yo Corp. had the right and ability control to the infringing content.

As previously shown, Plaintiff's Amended Complaint is a claim for direct infringement against Yo Corp.—not vicarious infringement. Yo Corp. addressed Plaintiff's failure to establish Yo Corp.'s authority over the infringing conduct in its Re-Urged Motion to Dismiss. *See* Doc. 13, at pgs. 5-6. Plaintiff's Response seemingly concedes the issue, pivoting to recharacterize his allegations as a claim for vicarious infringement against Yo Corp. However, Plaintiff has still failed to allege facts sufficient to establish Yo Corp.'s control over the infringing content.

To establish a claim for vicarious copyright infringement, Plaintiff must allege facts sufficient to demonstrate that Yo Corp "had the right and ability control" the allegedly infringing activity. *See Playboy Enterprises, Inc. v. Webbworld, Inc.*, 968 F.Supp. 1171, 1177 (N.D. Tex. 1997). Courts have established that merely owning and operating a website, or blocking its content, is insufficient to establish the control necessary for a vicarious infringement claim. *Viacom Int'l, Inc. v. YouTube, Inc.*, 676 F.3d 19, 38 (2d Cir. 2012) (explaining that the right and ability to control requires "something more than the ability to remove or block access to materials posted on a service provider's website."). Instead, the right and ability to control requires substantial influence by the platform over the creation of the infringing material. *Id*.

Here, Plaintiff's Amended Complaint only alleges that Yo Corp. is the owner and operator of the website and has the right and ability to supervise and control all content that is posted to the Website". *See* Doc 10, ¶ 14. These allegations are both unsupported and insufficient. *See* Doc. 13,

4

at pgs. 2-3; *see also Viacom*, 676 F.3d at 38. Plaintiff's Response now newly alleges that Yo Corp. may *remove* infringing content from the website. Again, this allegation is not found in the Amended Complaint, and even if it was, is insufficient. *See Viacom*, 676 F.3d at 38. It simply cannot be that by *removing* infringing content from a website in an attempt to aid copyright holders in enforcement of their rights, website owners open themselves up to liability for the same infringement.

Plaintiff's cite to *Playboy Enterprises, Inc. v. Webbworld, Inc.*, 968 F.Supp. 1171 (N.D. Tex. 1997) does not require a different result. In *Playboy*, the record established the undisputed facts that Mr. Ives (1) was the sole officer, director, and shareholder of Webbworld, (2) handled most of its business, financial, and legal matters, (3) conceived the business idea for the website and created the "Scan News" software program, and (4) ran Neptics' day-to-day operations." *Id*. at 1177. These undisputed facts—not a simple accusation that the website is owned and operated by a defendant—were the basis for the courts finding that the defendants had the right and ability to control what occurred on the Neptics' website. *See id*.

By contrast, even taking as true that Yo Corp. is the owner of the website, there is no allegation or evidence as to the level of control Yo Corp. has in the daily operations of the subject website or over the infringing content. Accordingly, Plaintiff has failed to meet his *prima facie* burden to show Yo Corp had the right and ability to control the infringing content. As a result, Plaintiff's hypothetical vicarious infringement claim should fail.

> **d. Plaintiff's Amended Complaint also fails to adequately allege a financial interest in the infringing activity.**

It is also a requirement of a vicarious infringement claim that a defendant has a "direct financial interest in the infringing activity." *See Playboy*, 968 F.Supp. at 1177. As admitted by Plaintiff, the only relevant allegation in Plaintiff's Amended Complaint is that Plaintiff "is

informed and believes that Defendant Yo Corp. monetizes the editorial content on its Website through banner advertisements." *See* Doc. 13 at ¶ 17; Doc. 14 at pg. 8. Again, this conclusory allegation is insufficient to properly allege a vicarious infringement cause of action.

Plaintiff again cites to *Playboy*, which in turn cites to *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 261-64 (9th Cir. 1996), to claim that the simple fact that a photograph "enhanced the attractiveness" of a website to potential customers. Doc. 14 at 8.

However, Plaintiff's reliance *Fonovisa*, via *Playboy*, is unpersuasive because the Ninth Circuit has clarified its position regarding direct financial benefit in post-DMCA cases. For example, in *Perfect 10, Inc v. CCBill LLC*, the Ninth Circuit determined that receiving a benefit from a content-agnostic tool, such as the ability for a third-party user to upload an article to a website, does not establish a financial benefit directly attributable to the infringing activity. 488 F.3d 1102, 1118 (9th Cir. 2007).

In *Ellison v. Robertson*, the Ninth Circuit interpreted *Fonovisa* to require some evidence beyond a hypothetical causal relationship between the infringing activity and the alleged financial benefits. 357 F.3d 1072, 1078-79 (9th Cir. 2004). There, the issue was whether AOL's providing access to USENET, a peer-to-peer site, constituted a direct financial benefit to its users. *Id.* The plaintiff provided evidence that (1) an AOL securities filing established the monetary importance of attracting and retaining users; and (2) evidence indicated that many subscribers had inquired about AOL blocking access to USENET. *Id.* The court rejected this evidence because it did not establish that AOL customers either subscribed or cancelled subscriptions because of the specific content at issue—USENET. *Id.*[2]

---

[2] Other courts have followed suit. *See Downs v. Oath Inc.*, 385 F.Supp.3d 298, 307-08 (S.D.N.Y 2019) (holding that Huffpost did not receive a direct financial benefit where it simply ran advertisements on user-generated articles, some of which inevitably contained infringing materials.").

Here, Plaintiff's only allegation is that Yo Corp uses ads to allegedly monetize the site. The evidence does not sufficiently allege that Yo Corp is the owner of the site, receives any actual benefit from the alleged advertising, and most importantly, does not establish that there is any causal relationship between Plaintiff's specific photograph at issue and any hypothetical profits Yo Corp allegedly received because of the posting of the photograph.

Accordingly, Plaintiff's bare accusation regarding advertising does not establish a direct financial benefit from the infringing activity, and therefore, his hypothetical vicarious infringement claim must, again, fail.

**II.     Defendant is protected from liability under the DMCA and Plaintiff's limited cites to out-of-circuit cases do not uproot the established "substantial compliance" standard of the Copyright Act.**

Plaintiff's argument that Defendant has not met the requirements of the DMCA to shield it from liability ignores that the standard of compliance required by the Copyright Act is substantial compliance. For example, courts have frequently held that immaterial errors in an application for copyright registration do not jeopardize the validity of the registration. *See e.g., Harris v. Emus Records Corp.*, 734 F.2d 1329, 1335 (9th Cir. 1984). Similarly, although copyright registration is a prerequisite to suit, courts have found that a copyright owner substantially complies with this requirement even if the copyright is registered after the infringing activity. *See e.g., Hagendorf v. Brown*, 699 F.2d 478, 480 (9th Cir. 1983).

The DMCA on its face also only requires substantial compliance. For example, a copyright owner's notice of claimed infringement must only substantially comply with the requirements of Section 512(c)(3). *Id*. This is because, the purpose of the DMCA is to strike a balance between the rights of copyright holders and "immunity to service providers from copyright infringement

7

liability for passive, automatic actions." *See ALS Scan, Inc. v. RemarQ Communities, Inc.*, 239 F.3d 619, 625 (4th Cir. 2001).

The same principle holds for Section 512(c)(2) requiring designation of a registered agent by service providers. That section holds that the limitation on liability applies

> ***only if*** the service provider has designated an agent to receive notifications of claimed infringement … by making available through its service, including on its website in a location accessible to the public, and by providing to the Copyright Office substantially the following information…

17 U.S.C. § 512(c)(2) (emphasis added). Thus, the plain language of the statute establishes that substantial compliance is the proper standard and that Defendant substantially complied with that Section 512(c)(2).

***First***, the plain language establishes that a party substantially complies with Section 512(c)(2) by designating—not registering—a registered agent. *See* 17 U.S.C. § 512(c)(2). By comparison, this standard is similar to the standard that minor defects in copyright registration do not invalidate a copyright. *See Harris*, 734 F.2d at 1335. Plaintiff's references to out-of-circuit cases, almost exclusively from the Northern District of California, are not binding and unpersuasive otherwise.

Here, Yo Air designated a registered agent and listed the registered agent's information on its website well before the alleged infringing activity. Moreover, Plaintiff were immediately able to reach Yo Air after he discovered the allegedly infringing activity. Accordingly, Plaintiffs suffered no harm and the purposes of the DMCA were clearly satisfied.

***Second***, Section 512(c)(2) provides that a service provider is shielded from liability "only if" a party provides the required information to the Copyright Office—not "only when." By analogy, as previously stated, although the Copyright Act requires a work to be registered before suit my be brought, it does not follow that the registration must occur before the infringing act.

*See Hagendorf* 699 F.2d at 480. To hold as much for the registered agent requirement would result in incomparable and inequitable standards to those claiming infringement (especially those, as here, who have not suffered any harm by an alleged failure to register with the Copyright Office before the allegedly infringing act) and those innocent infringers the DMCA was enacted to protect. Again, Plaintiff's cites to the Northern District of California, and single cite to the Southern District of New York, are unpersuasive and, respectfully, contradict the plain language and purpose of the DMCA.

Accordingly, Defendant substantially complied with the DMCA requirements and is therefore shielded from liability from Plaintiff's direct infringement, or hypothetical vicarious infringement, claims.

## CONCLUSION

For the reasons set forth above, Defendant Yo Corp. reurges its Motion to Dismiss Plaintiff's Amended Complaint with prejudice to refiling.

Respectfully submitted,

/s/ *Lauren S. Aldredge*
Lauren S. Aldredge
State Bar No. 24079380
COKINOS | YOUNG
900 S. Capital of Tx. Hwy, Suite 425
Austin, Texas 78746
Phone: 512-615-1148
Facsimile: 512-610-1184
Email: laldredge@cokinoslaw.com

**ATTORNEY FOR DEFENDANT
YO CORP.**

## CERTIFICATE OF SERVICE

      I hereby certify that on May 18, 2023, a true and correct copy of the above and foregoing Motion was served upon Plaintiff in this matter via the Court's Electronic Case Filing ("ECF") system, which will send an automatic notice of electronic filing to counsel of record for each party, who is a registered ECF user. Delivery of the notice of electronic filing constitutes service of this document as contemplated by Rule 5 of the Federal Rules of Civil Procedure.

                                                 /s/ *Lauren S. Aldredge*
                                                 Lauren S. Aldredge